**Bennie BENDER, Plaintiff,**

v.

**PANAMA CANAL COMPANY,
Defendant.**

Civ. No. 7769.

United States District Court,
D. Canal Zone,
Balboa Division.
Sept. 13, 1973.

Michael C. Pierce, Balboa, Canal Zone, for plaintiff.

Dwight A. McKabney and John L. Haines, Jr., Balboa Heights, Canal Zone, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

CROWE, District Judge.

There are two organizations in the Canal Zone: the Canal Zone Government, which is an independent agency of the United States and is administered under the supervision of the Governor of the Canal Zone (2 CZC 31); and the Panama Canal Company, a wholly owned subsidiary of the United States Government created by an Act of Congress for the purpose of conducting business and owning the properties that are necessary in the operation of the Canal Zone and the Panama Canal (2 CZC 61, etc.).

The Governor of the Canal Zone Government is also President of the Panama Canal Company and in many of their activities they overlap and are interrelated. This creates a situation whereby an unusual port situation exists that permits the Panama Canal Company to furnish services and supplies to ships in the Canal Zone waters and the Canal Zone Government, its alter ego, exercises control of the ship. This is probably a unique situation which may not exist elsewhere in the world.

In this case, the SS CHIMU arrived in the Port of Cristobal on August 27, 1972, subsequently made a southbound transit through the Canal, and was put to anchorage in the Balboa Outer Anchorage where she stayed for ten months. During the period from October 11th to October 19th, 1972, the Panama Canal Company furnished launch services, the services of a crane boat, a tugboat, line handlers and pilotage which amounted to the total sum of $1,556.25; these charges were not paid by the vessel, or owners, or agents.

On October 19th, 1972, various creditors filed suit in this Court in Civil No. 7614 against the CHIMU and her Peruvian owners and the vessel was arrested by the Marshal. Ultimately, claims in the amount of $102,493.00 were filed and on January 3rd, 1973, the vessel was sold at judicial sale to the plaintiff herein for the sum of $6,600.00. On the day of the sale, the Panama Canal Company was given leave to intervene in that action to assert its lien for the services it had rendered but was unable to realize anything on its claim as prior liens absorbed the money paid by the plaintiff.

On January 8th, 1973, this Court approved the vessel's sale to plaintiff, Bennie Bender, and the defendant in this action advised Mr. Bender by letter concerning the outstanding charges for services rendered by it to the CHIMU. Mr. Bender was also advised that under existing regulations no clearance to depart Canal Zone waters would be granted to the CHIMU until the charges had been paid.

Plaintiff Bender did not pay the charges but instead, on April the 17th, instituted the instant action against the defendant, the Panama Canal Company, demanding:

(a) That a clearance be issued to the CHIMU; and

(b) That he be awarded damages in the amount of $500.00 per day from January 9th, 1973 until the settlement of this claim.

Previously, on March 6th, the plaintiff had offered to post a surety bond to guarantee the amount of the defendant's claim so that he would be permitted to sail the CHIMU and the defendant would be protected if the plaintiff was unsuccessful in asserting his position. This was refused by defendant.

On June 21st, 1973, through an administrative error within the Canal Company, the $1,556.25 claimed was deducted from the plaintiff's account with the defendant and a clearance was issued by the Port Captain for the Port of Balboa permitting the CHIMU to sail. The plaintiff is therefore before this Court demanding that he be repaid the $1,556.25 and that he be compensated at the rate of $500.00 per day as set out above.

The plaintiff's position is that at the Marshal's sale he received title to the CHIMU free and clear of all preexisting liens and claims of any nature whatsoever, and if the Panama Canal Company had lost its lien as a result of this sale and had been unable to recover the money owed it because the vessel did not sell for enough that the latter could not be heard to exercise the authority through the Canal Zone Government of refusing to give clearance until the amounts owed the alter-ego defendant were paid.

Ordinarily a supplier of services in a port would not control the clearance of a vessel nor have the police power and authority to hold it in the waters of the port. Thus a person purchasing such a vessel at a Marshal's sale would probably not anticipate that he might run into problems with the port authorities arising out of a lien for services and supplies. The mere fact that this might surprise a purchaser of a vessel, however, is not controlling.

The Congress of the United States gave to the President the authority to issue regulations governing the navigation of the harbors and other waters of the Canal Zone (2 CZC 1331). This authority was delegated by Executive Order to the Secretary of the Army (35 CFR 3.1(a)(1)). The Secretary's regulations, therefore, have the force and effect of law and appear in Subchapter C of Title 35 of the Code of Federal Regulations. These regulations, in detail, permit the Governor and appropriate personnel to control the operations of these vessels and penalties are provided for violations of the regulations.

There is no reason, merely because the subsidiary company could not collect its claim under principles of admiralty from the monies realized out of the sale of the ship, that the Company/Government could not proceed administratively and refuse clearance to the ship until such claims were paid. The defendant had not been paid. It had merely lost its lien on the vessel in admiralty. It could have proceeded against anyone who might have been responsible for payment of the obligation in a civil action and it was not precluded from collecting its claim if another avenue presented itself. The services rendered were to the vessel and were valuable. If the two-headed organization operating the Canal failed to collect in a civil proceeding, there is no reason why it should not be permitted to collect by exercising its governmental control.

The Court's failure to permit the Canal Zone Government to enforce collections in such cases might cause far worse results than might occur to a ship purchaser at a Marshal's sale in such a case because the Company/Government organization, knowing that it could not control the sailing of vessels that might be obligated to it for services, might very well fail to render credit for important services and supplies to vessels.

It is understandable why a ship should be sold free of liens and encumbrances in admiralty because of a vessel's international operations. No purchaser could be expected to purchase a ship at a Marshal's sale whose title may always be in doubt. But here it is not a question of

title; it is clearance. Plaintiff Bender has a good title but he could not move because the Canal Zone Government chose to exercise its power and demand the purchaser to either pay or not sail.

It is common knowledge by all and sundry who deal in the area that the Canal Zone Government and the Panama Canal Company are in complete charge of the waters and facilities in the area. Anyone purchasing a vessel should be fully aware of the fact that before being able to sail the vessel from the Canal Zone waters that a proper clearance would have to be had from the Canal Zone Government. It is unfortunate that Mr. Bender has to pay this amount, but anyone purchasing a vessel in the Canal Zone waters is under the obligation to make his peace with the Canal Zone authorities prior to being permitted to sail.

The Motion for Summary Judgment is therefore sustained and the complaint is dismissed with costs to the defendant.